## CARGO FROM WRECK OF BARK EDWARDS.

*(District Court, S. D. Florida. April, 1882.)*

1. SALVAGE—DERELICT—COMPENSATION—EXTRAORDINARY MERIT.

    Salvage on derelict property is not limited to a moiety, as high as 70 per-cent. being given in a case of extraordinary merit, where the labor is considerable and the value of the saved property small.

2. SAME—SHIPWRECKED PROPERTY.

    Such damage as results to property from being shipwrecked and submerged in salt water, with breaking and loss of boxes and cases, *held* not to so change its condition as to exclude it from free entry, if shown to be products or manufactures of the United States, under provisions of section 2505 of the Revised Statutes.

3. SAME—IDENTITY OF PROPERTY.

    The identity of such articles must be established in conformity with prescribed regulations of the treasury department, and not by ordinary testimony.

In Admiralty.   Salvage.

*L. W. Bethel,* for libellants.

*G. Bowne Patterson,* Dist. Atty., intervening for duties.

No claimant.

LOCKE, D. J.   This property was found in the bottom of a bark which had been wrecked on Alacran reef, abandoned and gone to pieces. It was saved by diving by naked divers, in from two to two and a half fathoms of water, and boated some seven miles, to where the salving vessel had been obliged to anchor; has been brought to this port over 500 miles and libelled for salvage by the salvors, who are licensed wreckers of this district.

It appears to have been derelict in the fullest sense of the term, and its total loss certain, except by some such undertaking as the libellants engaged in.   The labor was severe and to a certain extent dangerous, both to the persons and property engaged, the services being rendered in uncertain weather, and on an open, exposed, and dangerous reef.   The actual diving and labor occupied about a week of extra-long days, while the value of the property saved, compared with the labor of saving it, is small, being, after payment of expenses and duties, but about $700.

The ancient rule of giving a moiety for salvage in cases of derelict, and limiting it to that proportion of the value saved, has gradually given way to one which has been generally accepted as more equitable and just, namely, a fair compensation for actual services rendered and labor performed, although it may exceed a moiety, and, when the amount justifies it, a liberal bounty in addition.

The records of this district show numerous instances where it has

been considered that a moiety would not reward the salvors as they deserved, and higher rates been given: 60, 70, 75, and even as high as 90 per cent. has been awarded in some instances where the property has been seemingly lost, the value comparatively small, and the labor proportionately large. I am well aware that these rates, as compared with those given by other courts, may seem unjustly large; but when I consider that the services are rendered by persons who are specially licensed and under obligations not only to go to the relief of all property in distress without stopping to consider whether it will be remunerative or not, but also to surrender and report to this court all derelict property found by them, of howsoever little value, and the honesty with which these obligations are fulfilled, I am not satisfied that the rates heretofore given under such circumstances as the present have been any too large; compensation for actual work and labor being the first point for consideration in awarding salvage, as well as in determining payment for any other services.

It is true that in rendering a salvage service the salvor assumes the risks of failure, and his salvage depends upon his success and the amount of property saved; yet when there is enough to fully compensate him for time and labor, and leave a reasonable proportion for the owner, he should certainly be awarded that, if the amount will allow no more.

I consider some of the circumstances in this case of unusual merit, and do not think a moiety sufficient to pay the salvors for their time, labor, exposure, and risk, while for any residue the owner may finally receive he will be indebted to their exertions, and 70 per cent. of the net proceeds of sale, after payment of all costs, expenses, and duties, will be allowed.

A petition has been filed by the United States attorney, intervening for duties, amounting to $426.12, alleging that the articles being derelict are *prima facie* dutiable, while the libellants claim, and have endeavored to show by marks and the character of some of the articles, that they were of the manufacture of the United States, and therefore not subject to duties. The property all having been for some time under water was considerably damaged, and the packages, boxes, and cases in many instances destroyed, so that the district attorney denies that it was "in the same condition" in which it was shipped, even admitting that it was the product of the United States. What construction is to be placed upon this term, "in the same condition as exported," as used in the acts of 1861 and 1870, and embodied into section 2505 of the Revised Statutes, is a question upon

which there might be a difference of opinion, and which I have been unable to find has been judicially decided. Several decisions of the treasury department have been made upon it, but no rule of determination has, as far as I can ascertain, been fixed. In decision 2,252, several organs which had received damage in the sea.voyage were permitted to entry duty free; as was also damaged powder which had been rendered worthless by the absorption of moisture, decision 2,755; also worn-out car wheels, 4,239; but the materials of an iron bridge which had been erected but swept away by a freshet before being used, and so damaged as to prevent its being used for the same purpose again, decision 2,493; steel engravings exported to receive the autograph of the artist, decision 4,105; and hoop-iron which had been used as cotton ties, decision 2,525,—were held to be liable to duties upon reimportation.

In market, if for sale, none of these articles would be considered to be in the same condition in which it is presumed they were shipped; but I cannot believe it the intention of congress to exclude articles on account of any damage either by usual and ordinary means or extraordinary circumstances which has not changed their character as to their uses and employment. The act of March 2, 1799, that permitted the reimportation of the produce of the United States made no exception on account of its condition, and I do not understand that the amendment of 1861 was with the intention of reaching cases of ordinary or even extraordinary damage by sea voyage or shipwreck, whereby the character, nature, or possibility of use might not be changed, but was intended rather to apply to those raw products, the character of which may have been entirely altered as to their value and use.

In this case not one of the articles—cotton goods, axes, hatchets, wire fencing, shot, etc.—have been so changed that they are not suited for the purposes originally intended, or are suited for any others. The packages, boxes, and original wrappings, when considered in this connection, become a matter of so small importance that I do not think that their total destruction could be held to affect the question of the condition of the property, if otherwise unchanged. It may be true that wheat in bulk may not be in the same condition as wheat in bags, or cotton loose, as that in bales, but the change in condition I consider too slight to be reached or intended by this statute. I do not think in this case the damage to the property by being under water, and by the breaking and destruction of the boxes and packages, has so changed its condition as to render it liable to payment

of duties if otherwise shown to be entitled to free entry. But, while not liable to duties, when the identity of the articles is properly established this must be done under regulations prescribed by the secretary of the treasury. This is a condition upon which the property may be admitted duty free, and no other testimony as to the origin, character, or shipment of the goods can entitle them to claim this benefit. The proof of identity must be made in the manner directed by the regulations of the treasury department, (articles 375 and 376,) as far as the circumstances possibly permit. The property apparently never having been landed in a foreign port, it will be impossible to furnish the statement required in article 377, which will not, therefore, be required.

Time will be allowed the parties to make such proof as the regulations require, not exceeding six months—the time given in the form of bond prescribed,—and in the mean time the entire amount of duties claimed will be retained in the registry of the court.